## PEOPLE *v.* ANSCOMB.

1. INTOXICATING LIQUORS — SEARCHES AND SEIZURES — PRIVATE DWELLING OF ANOTHER—RIGHT TO OBJECT TO SEARCH WARRANT. In a prosecution for manufacturing and having in possession intoxicating liquor, evidence obtained by a search warrant from a house sublet by defendant to others and which was not his home, which was otherwise competent, was admissible over defendant's objection that the affidavit and the search warrant issued pursuant thereto were invalid.[1]

2. SAME—EVIDENCE—CORPUS DELICTI ESTABLISHED—ADMISSIONS. Evidence of defendant's guilt, *held*, sufficient to establish the *corpus delicti*, outside of his own admissions of guilt.[2]

3. SAME—TRIAL—INSTRUCTIONS—MANUFACTURING LIQUORS. An instruction that if defendant allowed other parties to go on a place rented by him for the purpose of manu-

[1]Criminal Law, 16 C. J. § 1110; [2]Id., 16 C. J. § 1580; Intoxicating Liquors, 33 C. J. §§ 502, 505.
Right to seize for purpose of evidence property of one person under warrant of arrest of another, see note in L. R. A. 1915E, 299.

facturing liquor, and such liquor was actually manufactured there with his knowledge or consent, or in which manufacture he had a joint interest, then he was engaged in the manufacture of intoxicating liquors, and was guilty, *held*, correct.[3]

4. SAME—TRIAL—INSTRUCTIONS — PREVIOUS ARREST FOR INTOXICATION.

An *objection* that there was no testimony on which to base an instruction that the jury might consider testimony in regard to defendant's having been previously arrested for drunk and disorderly conduct, is without merit, where defendant himself testified to facts from which it might well be inferred that he had been arrested for being intoxicated.[4]

Exceptions before judgment from Muskegon; Vanderwerp (John), J. Submitted January 14, 1926. (Docket No. 153.) Decided March 20, 1926.

Thomas Anscomb was convicted of violating the liquor law. Affirmed.

*John G. Turner (Willard J. Turner, of counsel), for appellant.*

*Andrew B. Dougherty*, Attorney General, *R. Glen Dunn*, Prosecuting Attorney, and *Robert H. Dunn*, Assistant Prosecuting Attorney, for the people.

SNOW, J. The defendant was convicted of manufacturing and having in his possession intoxicating liquors. He had rented a farm from one Max Kuharick, and claims that he sublet the house thereon to two Polish men whose names he did not know, but who told him they were trappers from White river near Manistee, and that they bought furs and hunted, and wanted the house to stay in while they were in that vicinity. However, instead of trapping, they engaged in the manufacture of liquor there, which

[3]Intoxicating Liquors, 33 C. J. § 547; [4]Id., 33 C. J. § 547.

fact became known to Kuharick, the owner, who did not report it to the authorities. Later two deputy sheriffs visited the farm and saw the defendant go to the house with a pail and then return. They also saw whisky mash there, whereupon one of the officers made affidavit before a justice of the peace that the premises were occupied by Kuharick as a place of public resort, and that liquor was being manufactured there. A search warrant was obtained, the premises searched, and three complete stills, 700 gallons of whisky mash, and other articles used in its manufacture were seized, Kuharick was arrested, and the search warrant filed and returned in his case.

Later the defendant was informed against in a separate information, and upon the trial the prosecution offered in evidence the stills, coils, jugs and contents secured by them on search of the dwelling by virtue of the search warrant issued in the case against Kuharick. To this offer defendant's counsel objected, and an effort was made by him to question the sufficiency of the affidavit for this search warrant. This right was denied him and the exhibits were admitted in evidence.

Defendant insists that he had the right to question the validity of the affidavit for the search warrant, even upon the trial, and to have all evidence obtained by virtue thereof suppressed. He contends he could not have made the motion to suppress before the trial began, as there was no search warrant in his case and he had no way of knowing there had been one in the Kuharick case until the offer was made.

It must be remembered that the dwelling searched was not the dwelling of the defendant. He did not live there, and he had no interest in or possession of the house on the Kuharick farm, he having sublet it to others. Whether the search warrant used to search this house belonging to Kuharick, and occupied by him

and others, was good or bad, was no concern of the defendant.    No right, constitutional or otherwise, of his had been invaded, even though the Kuharick house had been unlawfully searched, and while Kuharick could have had the evidence suppressed in his case if the search warrant proceedings were faulty, it is difficult to see how this defendant could complain of an act unlawfully committed in the search of another's home.    If otherwise competent, the evidence, then, was admissible, and it becomes unnecessary for this court to determine the validity of the affidavit or the search warrant, and the seizures made by virtue of the same.

Counsel for defendant further urges that the court should have granted his motion to direct a verdict for the reason there was no evidence against defendant, excepting his own admissions of guilt, which were not sufficient to establish the *corpus delicti*.    Max Kuharick, owner of the farm, a witness for the prosecution, testified that he had rented the farm and house to the defendant in September, 1924, for a period of one year for a rental of $50, and that for a period of time before his arrest defendant came to the farm practically every day, although he lived about two miles away on a poor road.    On the day the search was made he testified he went to the defendant's home and said to him:

"Tom, what did you do?    It is not allowed, and you can put me in trouble and yourself."

He said:

"Don't worry about nothing; if it comes trouble about this I am responsible for everything."

Charles Walker, a witness for the prosecution, testified that he saw the defendant on the premises on the 13th day of July, the day before the search, about 8 o'clock in the evening; that he waited until defendant

went away and then went to the premises and got the smell of mash and saw the still and stoves through the window in the basement of the house; that he afterwards talked with defendant about the manufacture of liquor, and defendant said he only made a little bit of whisky and wanted to know what was to be done about it; that he hadn't been making it very long and that he was going up and plead guilty.

Tony Joslyn, still another witness called by the prosecution, testified that he saw defendant on the Kuharick place the day before the search, and that he saw him take something into the house. Later defendant told him he hadn't been making moonshine as long as they credited him with it. He said he would plead guilty. He didn't say he was renting the place or running it. He said he was making moonshine there.

The theory of the prosecution was that the defendant was engaged with the others in the manufacture of liquor in this house; that he lived elsewhere, but frequently visited the premises and knew of, and was a party to, what was being done there. The court properly submitted it to the jury in the following language:

"I charge you also that if the house on the Kuharick place was rented to Anscomb, and while his lease had not expired he allowed other parties to go on the place *for the purpose of manufacturing liquor,* and such liquor was actually manufactured there with his knowledge, that is with Anscomb's knowledge or consent, or in which manufacture he, Anscomb, had a joint interest with others, then he was as much engaged in the manufacture of intoxicating liquor as if he actually with his own hands engaged in the manufacture of it, and in that event if you so find, he is guilty of manufacturing liquor."

This portion of the court's charge is excepted to by defendant, but it is a correct statement of the law,

and there was sufficient evidence, aside from defendant's admissions, for the consideration of the jury. The charge as a whole in this respect properly safeguarded the rights of the defendant, and we find no error in it that could be regarded as prejudicial.

Further complaint is made that the court charged the jury that it might consider testimony in regard to the defendant having been previously arrested for drunk and disorderly conduct, when there was no testimony in the case.    Defendant himself testified:

"I was arrested once before in Newaygo county.    I never was arrested for stealing cattle.    I don't know what they claim I was arrested for then.    *    *    *  'Get up here,' and the first thing I know he helped me up and then he held out his arm, and I throwed up a lot, a lot.    I wanted to lay down and he said, 'I will give you a place to lay down,' and he took me in a car and took me up to the city hall.

"Q. That is what they arrested you for that time?

"A. Yes."

The symptoms at the time of his arrest might lead one to well suspect that he had imbibed too freely, and that what he was arrested for was being intoxicated. The court's instruction was based upon the testimony, and clearly proper.

We find no reversible error, and the conviction is affirmed.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.