## PEOPLE v. HENDERSON.

1. SEARCHES AND SEIZURES—AUTOMOBILES.
   Search of an automobile is a special case under both Federal and State search and seizure law.

2. SAME—AUTOMOBILES—PROBABLE CAUSE.
   Search of an automobile may be made in connection with the arrest of its driver if police officers have probable cause to believe that the automobile has been stolen.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 5 Am Jur 2d, Arrest § 43 *et seq.*; 47 Am Jur, Search and Seizure §§ 18, 19.
[5] 46 Am Jur, Robbery § 14 *et seq.*

3. SAME—STOLEN AUTOMOBILE—PROBABLE CAUSE.

Police officer who knew of broadcast that stolen automobile was wanted in connection with an armed robbery, and recognized that automobile driven by defendant fitted description of stolen car and had same license number, had probable cause to believe that automobile driven by defendant had been stolen, hence, officer's seizure of the car and search thereof was justified (CLS 1961, § 750.529).

4. SAME—STOLEN AUTOMOBILE—GUNS.

Search of automobile and seizure of pistol and bullets found concealed therein and later used as evidence at defendant's trial for armed robbery *held*, lawful, when police officer saw automobile in which defendant was driving, recognized it as fitting description of stolen car used in armed robbery, saw license number to be same as that broadcast for stolen car, and saw through automobile window that ignition switch was without a key and wired in a manner often used to start a car without a key (CLS 1961, § 750.529).

5. ROBBERY—ARMED ROBBERY—VOLUNTARY DONATION.

Guilt of robbery armed in case where complaining witness testified that he gave money to defendant at gunpoint *held*, shown beyond reasonable doubt as against defendant's contention that testimony of other witnesses showed that he had put pistol in his pocket with his hand remaining there, and that complaining witnesses's act in handing over money was voluntary donation (CLS 1961, § 750.529).

Appeal from Kent; Vander Wal (John H.), J. Submitted Division 3 November 9, 1966, at Grand Rapids. (Docket No. 1,425.) Decided March 28, 1967.

Neal Alan Henderson was convicted of robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Sherwin J. Venema,* Assistant Prosecuting Attorney, for the people.

*Richard G. Leonard,* for defendant.

McGREGOR, P. J.  Appellant was convicted·by a jury of the crime of armed robbery,[1] committed on March 19, 1965.  The facts of the events of that night are basically agreed upon.  The dispute in this case concerns the legal consequences of certain acts.

Shortly after 8 p.m., on March 19, 1965, the complaining witness, a free-lance used car dealer, was driving with his wife past the used car lot where he had parked some used automobiles.  He stopped and got out of his automobile, leaving his wife inside. He noticed that a 1965 Corvette automobile which. was on the lot had its engine running and some one was inside it.  There were also two young men walking together around the lot, looking at automobiles.  These young men were later presented as prosecution witnesses.  The complaining witness talked with the two young men and asked them to observe him as he approached the Corvette, explaining that he believed the Corvette was being stolen.  As the trio approached the Corvette, the person inside was observed to be the appellant, Neal A. Henderson, who was, from the evidence, unknown to any of the men before that time.  In the ensuing conversation, the complaining witness questioned the appellant as to why he was in the automobile.  The appellant told the story of his recent employment by the owner of the used car lot.  The group started walking towards a telephone, some 600 feet away, to call the lot owner to verify this story.  The transcript contains the testimony of the complaining witness as follows:

"We walked approximately 50 feet and he drew· this gun from his pocket which was a very small. gun, you could barely see it.  He had it in the palm; of his hand, and he says, 'all right, that is far

---

[1] CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).—REPORTER.

enough' and of course then none of us tried anything.
He just happened to fall back a few feet, he drew this
gun and we stopped   *   *   *   when he drew this gun,
he says, 'I don't know what I am going to do with
you guys, but stop right here,' so I also told Lake
and Stephens, I said 'look fellows, don't try any-
thing,' I said this in front of Neal Henderson, so we
didn't try anything.

"During this time my wife was in the car, in the
front of the lot which is approximately 50 feet away
from where we were standing, and then he also as
he had the gun on us for a while, he stood there
then he says 'do you guys have any money,' Lake
and Stephens answered and said 'no.' I says 'I have
a little bit.' At gun point he said again 'well give
it to me,' and I drew out, I believe it was, $15 which
I gave to him at gun point, and then he says 'is this
all you have?' I says, 'no, I have a couple of dollars
more,' he said 'well give me that I will need that
for gas,' which I had $6 more, I believe at the time
it was, I handed him $5, I said, 'why don't you let
me keep this $1 so I can get gas in my car?' which
he allowed me to do. At this time the three of us
were still standing there at gun point. After he
asked us this and he asked Stephens or Lake, I am
not certain which car it was, they had a car in front
of the lot, he said, 'may we leave?' he said, 'definitely
not.' "

The testimony of the complaining witnesses was
substantiated by the two young men, Lake and
Stephens, with one exception, that some time be-
tween the time that the appellant "asked" for the
money and the time when the money was actually
handed over to the appellant, the appellant put his
gun into his pocket with his hand remaining in the
pocket with the gun.

The appellant then directed the three men to get
into the complaining witness's automobile with the
complaining witness's wife. They were given in-

structions by the appellant where to go. The appellant followed them in the Corvette from the used car lot. After a chase through the city traffic of Grand Rapids and a high-speed chase on the expressways in that area, the automobile containing the four innocent parties in this incident was able to "lose" the Corvette driven by the appellant. The complaining witness found a telephone and called the local police department, reporting the incident, the description of the Corvette, and its license number.

The description of the Corvette and its license number were broadcast to all the State law enforcement units. The undersheriff of Mecosta county observed a Corvette pulling into a gasoline station at about 9:30 p.m. the next evening. The officer recognized the automobile as fitting the description broadcast as the stolen automobile wanted in connection with an armed robbery. After confirming the description and the license number of the Corvette with the Grand Rapids police, the officer left his cruiser and approached the appellant, who was standing near the Corvette in the gasoline station. The appellant was asked for his driver's license and automobile registration, but stated that he had "left them home." The officer noted, during this conversation and through the window of the Corvette, that there was no key in the ignition of the Corvette and that the ignition switch had been wired in a manner often used by auto thieves to start an automobile without a key. The officer asked if the appellant minded if the officer looked in the automobile; the appellant replied, "It sits right there, go ahead." A search of the Corvette revealed a small, loaded hand gun behind the front seat. The officer then searched the appellant and found an additional clip of bullets of the same caliber as the hand gun. This gun was subsequently used as people's exhibit #1 in the

trial of the appellant on the charge of armed robbery.

This appeal from conviction is based upon two theories: First, that the gun used as the people's exhibit was gained from an unlawful search and seizure and, therefore, was inadmissible as evidence. Under this theory, the appellant seeks to have the finding of guilt set aside and the case remanded for a new trial. The second theory is that the weight of the evidence did not sustain the verdict of guilty of armed robbery. This theory argues that the evidence showed that the complaining witness voluntarily gave the money in question to the appellant and the evidence does not show that the appellant took the money from the complainant. Under this theory, the appellant argues that the case should be dismissed.

The question of search and seizure from an automobile in Michigan has recently been covered extensively by the Michigan Supreme Court in the case of *In re Winkle* (1964), 372 Mich 292, certiorari denied (1965), 379 US 645 (85 S Ct 611, 13 L ed 2d 551). That case had been remanded to the Michigan Supreme Court upon the suggestion of the attorney general of Michigan, after certiorari had been granted,[2] for a reconsideration of the decision in *People* v. *Winkle* (1960), 358 Mich 551, in the light of the then recent Supreme Court ruling of *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933). It is interesting to note that the reconsidered decision in the *Winkle Case, supra,* produced three separate opinions; however, any of the opinions would support an affirmation of this case. We need not repeat the history of search and seizure in Michigan, as was so ably set out by Mr. Justice KELLY in the case of *In re Winkle.* The

---

[2] *Winkle* v. *Bannan* (1961), 368 US 34 (82 S Ct 146, 7 L ed 2d 91).

position that an automobile is a special case under the Federal search and seizure law has long been established. See *Carroll* v. *United States* (1925), 267 US 132 (45 S Ct 280, 69 L ed 543, 39 ALR 790). In upholding the search registered in the case of *In re Winkle,* Justice KELLY made it clear, emphasizing a fact very similar to a fact in this case, that *Mapp* v. *Ohio, supra,* has not changed the special treatment of automobiles under the search and seizure provisions of the Constitution. He stated, at page 316:

"A search conducted in Michigan comparable to the *Mapp* search would not have been condoned under our constitutional law, but would have been condemned. Winkle's home was not searched, but an automobile he was driving which was not registered in his name."

Justice SOURIS, in his concurring opinion, on page 327, states the applicable law, that a search of an automobile could be made if police officers "had probable cause to believe  *  *  *  that the automobile had been stolen."

In *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11 L ed 2d 777), the United States Supreme Court reversed a conviction where an automobile had been searched after it had been towed to the police garage and the driver had been incarcerated. Mr. Justice Black, speaking for a unanimous court, at pages 367 and 368 in that opinion, stated:

"We may assume, as the government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene."

There is no question that in this case the officer had probable cause to believe the Corvette had been

stolen. A description of the auto plus the exact license number had been broadcast as the stolen automobile wanted in connection with an armed robbery. Under the circumstances presented, the officer would have had no justification for failing to make the search that he did.

We find the theory advanced by the appellant that the complaining witness voluntarily gave the money to the appellant and that, therefore, the jury had no basis for a conviction of armed robbery to be totally without merit.

There was no reversible error committed in the admission of evidence, nor were the constitutional rights of the appellant violated by the search and seizure. The record indicates no miscarriage of justice.

Affirmed.

BURNS and NEWBLATT, JJ., concurred.