## PEOPLE *v.* HALE.

1. CRIMINAL LAW—CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—
   EVIDENCE—ADMISSIBILITY—SUPPRESSION—FELONIOUS ASSAULT.
   Claim by defendant, charged with felonious assault, that error was committed in the denial of his motions to suppress from evidence an ax owned by defendant which had been seized by police officers, acting without a search warrant, from the apartment of an upstairs neighbor following an illegal search of defendant's own apartment *held*, without merit, since no rights of a defendant, either constitutional or otherwise, are invaded when property not under the control of the defendant is searched (US Const, Am 4; Mich Const 1963, art 1, § 11; CL 1948, § 750.82).

2. SEARCHES AND SEIZURES—EVIDENCE.
   Evidence found by police officers on other premises, subsequent to an original illegal search of defendant's premises *held*, not the result of an illegal seizure (US Const, Am 4; Mich Const 1963, art 1, § 11).

---

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 29 Am Jur 2d, Evidence § 418 *et seq.*
Comment Note.—Nature of interest in, or connection with, premises searched as affecting standing to attack legality of search. 78 ALR2d 246.
Interest in property as requisite of accused's standing to raise question of constitutionality of search and seizure. 96 L ed 66, 4 L ed 2d 1999.

3. SAME—EVIDENCE—ADMISSIBILITY.

> The immunity to illegal searches and seizures is a personal privilege, and evidence wrongfully obtained, including property of accused, is not incompetent against accused where the unlawful search and seizure was of the person or property of a third person, or unless it is shown that accused was in possession or had the right of possession or control of the premises searched (US Const, Am 4; Mich Const 1963, art 1, § 11).

Appeal from Berrien; Zick (Karl F.), J. Submitted Division 3 March 7, 1967, at Grand Rapids. (Docket No. 1,102.) Decided June 13, 1967.

Rinzer Hale, also known as Jack Hale, was convicted of felonious assault. Motion for new trial denied. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John T. Hammond,* Prosecuting Attorney, and *Harry J. Creager,* Assistant Prosecuting Attorney, for the people.

*Edward M. Yampolsky,* for defendant.

FITZGERALD, P. J. Defendant was involved with several other persons in an all-night drinking bout which culminated in defendant's arrest on a charge of felonious assault.* From testimony at the preliminary examination and trial, it appeared that defendant became involved in an argument over the consumption of his whiskey supply, went into his bedroom, came out with an ax and struck the victim over her eye. The participants in the affair were taken to the Berrien county jail and, after questioning, defendant was locked up and the others released, after giving statements to the police officers.

---

* CL 1948, § 750.82 (Stat Ann 1962 Rev § 28.277).

The following day, a deputy sheriff went to defendant's home to get the ax for use in the trial of defendant. The officer possessed no search warrant and it appeared from the testimony that, being unable to find anything in defendant's apartment, he searched further and found the ax on a shelf in another part of the building away from defendant's apartment. It had been placed there by a neighbor after he had borrowed it to chop wood.

Counsel for defendant moved to suppress the ax from evidence on 3 occasions: first, at the preliminary examination; second, by motion to quash or suppress; and third, at the trial by leave of the court. All 3 times the motion to suppress was denied. Defendant was convicted of felonious assault by jury trial and was sentenced to 3 to 4 years imprisonment. A post-trial motion for new trial was denied and claim of appeal taken.

Defendant asks a single question on his appeal: Did the trial court commit reversible error in failing to grant defendant's motion to suppress evidence, namely, one ax, for reason that the ax was the product of an unlawful search and seizure, contrary to the Michigan Constitution of 1963, art 1, § 11, and the Fourth Amendment to the Constitution of the United States?

Counsel submits an ingenious argument in support of his contention, suggesting that the police actually intended and did first commit an illegal search of defendant's living quarters before finding out from a neighbor that he had moved the ax to another location. He states, "Through no fault of the police, and without the knowledge or consent of the respondent, the ax [was] moved from respondent's apartment to the upstairs apartment of a fruit picker's tenant shack."

Defendant cites no authority for his proposition that evidence seized outside the curtilage is tainted by the illegal entry of police into the defendant's home immediately preceding the seizure. He does not contend that the police found or seized anything within the curtilage that aided their discovery of the ax. In effect, he asks an extension of the so-called "poison fruit" doctrine to an interpretation that holds that once an illegal search has occurred in the course of an investigation, anything found thereafter, even if found pursuant to a legal search, would be inadmissible.

We cannot uphold defendant's contention, the important factor here being the exact spot in which the ax was found. Testimony clearly indicates that it was not found in the residence of defendant, nor was it found with the assistance of information gained in the search of defendant's property.

A portion of the transcript of the preliminary examination supports all of the denials to suppress the evidence. Under cross-examination, Murray Collins, defendant's upstairs neighbor, testified as follows:

"*Q.* How did the police get this ax?

"*A.* They come around there. They come in there looking for that and he come around. See, we cut wood with the ax. He picked the ax up.

"*Q.* Where was the ax when the police picked it up?

"*A.* On the ground—let me see, wait a minute. It was on the ground—upstairs.

"*Q.* How did it get upstairs?

"*A.* Well, we had been cutting wood with it. We carried it upstairs and put it up on the table there.

"*Q.* You cut wood with it after Jack had it in his hand?

"*A.* After Jack—yes.

"*Q.* Then where did you get it, from his apartment downstairs?

"*A.* Yes.

"*Q.* So you took it out of his apartment and took it upstairs?

"*A.* Yes. We got the ax, you know, borrow it all the time. There ain't but one ax there in the apartment. We cut wood with it. Jack let me have the ax.

"*Q.* Jack was in jail then, huh?

"*A.* Yes.

"*Q.* Take it out of the apartment so that the police could get it?

"*A.* Me?

"*Q.* Did you take it out of the apartment?

"*A.* No, the cops come back, said, 'I've got to have that ax, so I goes around the back—inside the cops' car—goes around in back, he follows me around there and picks up the ax.

"*Q.* Did the police come out and ask you for the ax?

"*A.* He asked 'O.T.' about the ax.

"*Q.* Did they look through Jack's apartment first before they asked you?

"*Mr. Hammond:* Objection.

"*Mr. Yampolsky:* If he knows this he can testify to it.

"*Witness:* What did you say?

"*Q.* Did the police look for the ax?

"*A.* Yes.

"*Q.* Did they look through Jack's apartment first?

"*A.* They come around there and asked where the ax—yes, we walked in Jack's. He come around in the back, he looked all around the house, and then he found the ax. I was going upstairs, had an ax up there. He picked the ax up.

"*Q.* He picked it up upstairs or downstairs?

"*A.* Upstairs, up on the shelf—shelf there on the back.

"*Q.* Did Jack use that shelf too?

"*A.* No, we use it. We carries the ax upstairs all the time. When we cut wood we use it—you know what I mean."

Michigan has a small body of authority, based on gambling and prohibition cases, supporting the general proposition that no rights, constitutional or otherwise, are invaded when property not under the control of defendant is searched. See *People* v. *Norwood* (1945), 312 Mich 266; *People* v. *Bartoletta* (1929), 248 Mich 499; *People* v. *Azukauckas* (1927), 241 Mich 182; *People* v. *Anscomb* (1926), 234 Mich 203.

On defendant's specific proposition, however, we find no authority and decline to create any that searches of other premises subsequent to an original illegal search result in illegal seizures.

An authoritative summation of the prevailing rule of law is found in CJS, Criminal Law, § 657(9), where it is stated:

"The immunity to illegal searches and seizures is a personal privilege, and evidence wrongfully obtained, including property of accused, is not incompetent against accused where the unlawful search and seizure was of the person or property of a third person, or unless it is shown that accused was in possession or had the right of possession or control of the premises searched."

Defendant's motion to suppress was properly denied at each juncture, as was the motion for a new trial.

Affirmed.

BURNS and HOLBROOK, JJ., concurred.