**UNITED STATES of America**

v.

**Marvin RICCI.**

**Crim. No. 70-5.**

United States District Court,
E. D. Pennsylvania.

May 19, 1970.

**32**

Louis C. Bechtle, U. S. Atty., Charles B. Burr, III, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Carmen P. Belefonte, Chester, Pa., for defendant.

## OPINION

KRAFT, District Judge.

Defendant has filed a motion to suppress certain evidence seized under three search warrants issued by a state magistrate pursuant to complaints submitted by two policemen of the City of Chester.[1]

It is alleged that the affidavits in the complaints are insufficient as a matter of law because they fail to disclose the source of the informer's information to support the belief of the officers that there was stolen whiskey stored on defendant's premises and in a garage and in his Dodge truck. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

1. Defendant also seeks suppression of all statements obtained from him by F.B.I.

The pertinent portions of the complaints read as follows:

"information has been received from a reliable informer who we have used in the past, and who we believe to be true, and information from this informer has been used in the past for prior arrests that a quantity of Johnny Walker red label, Scotch, which are in cased, 12 bottles to a case, are being stored in the above mentioned house. The informer also stated that the above mentioned Scotch is stolen from the City of Wilmington, Delaware. This informer also stated that Ricci is also known as Scudsy. A teletype was received from the Wilmington Police Dept. stating that this whiskey was stolen, and also that all of the cases were marked with numbers."

At the hearing on defendant's motion, Sergeant William Hamilton of the Chester Police Department testified that he and Detective Hoopes, of the same department, executed the complaints for the warrants (n. t. 6, 21). Sergeant Hamilton stated that he and Detective Hoopes procured the warrants "based on information received from the F.B.I. and another officer, we secured a search and seizure warrant." (n. t. 5). Detective Hoopes recalled that: "It was the information they [F.B.I.] gave us that we secured the warrants from." (n. t. 22). Detective Hoopes also confirmed the fact that information was also received from "other police officers." (n. t. 22, 23).

After the warrants were obtained Sergeant Hamilton, Detective Hoopes, five or six Special Agents of the F.B.I., two police officers from Wilmington, Delaware, and several other police officers, converged on the defendant's home and garage.

Sergeant Hamilton accompanied three Special Agents and several police officers to the defendant's home. Sergeant Hamilton presented the warrants to the defendant. Special Agent O'Connor advised Mr. Ricci of his rights and the lat-

agents because such statements were the product of the illegal search and seizure.

ter then executed a statement confirming the fact that he had been advised of his rights and declined a lawyer. (n. t. 38). Detective Hoopes went to the garage directly across from Mr. Ricci's home with two police officers from Wilmington, Delaware. (n. t. 38). Shortly thereafter Mr. Ricci was brought to the garage in the company of the F.B.I. agents and other police officers (n. t. 24). Mr. Ricci then opened the garage with a key. (n. t. 24). The overhead door to the garage was made of wood and had no windows. (n. t. 48, 49).

After a search of the defendant's home which disclosed no whiskey, Sergeant Hamilton went to the garage and noted that the door was raised, revealing several hundred cases of Scotch whiskey. (n. t. 7–10). Thereafter, Mr. Ricci accompanied the police and F.B.I. to a Gulf service station where the Dodge panel truck was parked. A search of this vehicle revealed a number of additional cases of similar whiskey (n. t. 41).

Subsequently, defendant, in custody, was taken to the Chester Police Department where he was again advised of his rights and questioned by the F.B.I. (n. t. 30). After the interrogation, the defendant gave a signed statement to the F.B.I. (n. t. 30–35). During both the search and interview defendant was cooperative with the police and the F.B.I. (n. t. 30, 33).

The fundamental issue of law presented is whether the informant's tip as disclosed was adequate to provide a basis for a finding of probable cause that a crime had been committed.

█ After careful evaluation of the complaints, the testimony taken at the hearing on the motion and the prevailing law, we regretfully conclude that the complaints for the search warrants did not provide sufficient basis for a finding of probable cause for the issuance of search warrants. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The informant's tip, an essential part of the affidavit, does not set forth any of the underlying circumstances from which the informant concluded that stolen whiskey was being stored at the three locations for which the warrants were issued.

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip described the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli v. United States, id at 416, 89 S.Ct. at 589; Aguilar v. Texas, supra.

In this case, the hearing revealed that the "informer(s)" in the complaints were the F.B.I. and other police officers. However, the affidavits and the record reveal nothing about the source from which the F.B.I. and the police obtained their information.

. "The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' *it does not even contain an 'affirmative allegation' that the affiant's unidentified source spoke with personal knowledge.*" Aguilar v. Texas, supra, 378 U.S. p. 113, 84 S.Ct. p. 1513 (emphasis ours).

█ The government now contends that because defendant's counsel never offered them in evidence, the complaints and warrants are not properly before the Court. We are not impressed with this argument. The constitutional issue raised by the defendant's motion necessarily requires, that the *Court, itself,* consider the sufficiency of the complaints to determine whether any valid process was issued by the Magistrate to authorize the search and seizure.

The government also contends that, disregarding the claim of invalidity of the warrants, there was probable cause

to seize the whiskey in defendant's garage without a warrant, because it was plainly visible. We believe that the government misreads the record. As earlier mentioned, defendant's garage door, of solid wood and without windows, was locked when Detective Hoopes arrived. There was no side door, but a rear door which was obstructed because it was "piled up from another tenant's house." (n. t. 49).

 Moreover, it cannot be asserted successfully that the search was incidental to an arrest, since the uninterrupted chain of circumstances beginning with entry into the defendant's house and later the garage, were under the authority of the warrants. "Without the search warrant it appears that entry to the house would not have been made." United States ex rel. Campbell v. Rundle, 327 F.2d 153, 163 (3 Cir. 1964).

Finally, the government seeks to salvage the oral and written statements given by the defendant to the F.B.I., because all of the essential warnings were given to the defendant. While the defendant received all of the appropriate warnings before giving his statements, it is manifest that these statements were inextricably interwoven with the entry and arrest of the defendant pursuant to the invalid warrants. It is unpersuasive to assert that the "friendly cooperation" manifested by Mr. Ricci in the midst of a squad of law enforcement officers, possessed with seemingly valid search warrants, was the product of a free will, unaffected by the unlawful entry.

Accordingly, the oral and written statements made by Marvin Ricci at the time of the unlawful entry and subsequent interrogation must be suppressed and excluded from the evidence as the "fruits of the agents' unlawful action * * *." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We reserve decision on the defendant's rather brazen claim for the return of the seized whiskey, since there is no evidence to show that he had either title or right of possession; to the contrary, it appears to be undisputed that the whiskey was stolen in Wilmington, Delaware. We do not conceive it to be the function of this Court or this proceeding to restore stolen goods other than to those rightfully thereunto entitled.

## ORDER

NOW, this 19 day of May, 1970, it is ordered that:

1. the defendant's motion to suppress is granted;

2. all articles seized and all oral and written statements shall be excluded from evidence upon defendant's trial;

3. the United States is directed forthwith to endeavor to ascertain the owner or owners of the seized whiskey and to submit supporting documents to the Court to enable the Court to designate all claimants and to order a hearing to determine any disputed issues of ownership and/or right of possession.