PEOPLE v WHITE

Opinion of the Court

1. Searches and Seizures—Vehicles—Search Without Warrant—Reasonable Time—Probable Cause.

A search of an automobile which was conducted without a warrant 18 hours after the vehicle was impounded following an arrest was conducted within a reasonable time, and was therefore constitutionally permissible, where there was sufficient probable cause at the time of impoundment to conduct an immediate search without a warrant, the automobile was impounded in the late afternoon and only held overnight before the search was conducted, and where no officer was put in charge of the case until the following morning.

2. Searches and Seizures—Vehicles—Search Without Warrant—Immediate Action—Reasonable Time—Supreme Court.

An immediate search without a warrant of a vehicle is constitutionally permissible, and the Supreme Court has consistently held that where immediate action is called for, only action within a reasonable time is required.

Dissent by R. M. Maher, J.

3. Searches and Seizures—Vehicles—Search Without Warrant—Reasonableness—Exceptions—Autombiles—Applicability.

*Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment; the recognized exception that an automobile stopped on a highway may be searched incident to an arrest does not apply where an accused is placed under*

---

References for Points in Headnotes
[1–4] 68 Am Jur 2d, Searches and Seizures §§ 34, 57, 106.
Validity, under Federal Constitution, of warrantless search of automobile—Supreme Court cases. 26 L Ed 2d 893.
Lawfulness on "inventory search" of motor vehicle impounded by police. 48 ALR3d 537.
[2, 4] 68 Am Jur 2d, Searches and Seizures §§ 44, 45.
[4] 68 Am Jur 2d, Searches and Seizures § 41 *et seq.*

*arrest and taken into custody, and the search of his automobile is later conducted at another place without a warrant (US Const, Am IV).*

4. Searches and Seizures—Probable Cause—Search Without Warrant—Automobiles—Exigent Circumstances—Police Judgment.

*Probable cause to believe that an automobile contains contraband or evidence of a crime is not, in itself, enough to bring into play the exception to the constitutional requirement of a warrant for searches and seizures; only in exigent circumstances, such as where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought, will the judgment of the police as to probable cause serve as a sufficient authorization for such a search.*

Appeal from Wayne, Charles Kaufman, J. Submitted February 10, 1976, at Lansing. (Docket No. 22161.) Decided April 5, 1976.

Allan White was convicted of larceny from a motor vehicle. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Robert W. Horn,* Assistant Prosecuting Attorney, for the people.

*Lawrence R. Greene,* for defendant on appeal.

Before: Bronson, P. J., and McGregor and R. M. Maher, JJ.

McGregor, J. Defendant, Allan White, was convicted by a jury of larceny from a motor vehicle, MCLA 750.356a; MSA 28.588(1), and was subsequently sentenced to a term of 3 to 5 years in prison. He appeals as a matter of right.

The defendant raises five issues for our consideration. However, only one merits discussion. The defendant claims that the alleged stolen property should not have been admitted into evidence since it was obtained by means of an illegal search and seizure.

Before such a claim can properly be assessed, it is first necessary to review the pertinent facts.

On the afternoon of June 2, 1974, at approximately 2 p.m., Glenn Stock and his wife arrived at the Brookdale Golf Course, located at Six Mile and Sheldon Roads in Northville. He removed two sets of golf clubs from his car trunk, leaving a new radial spare tire inside. Mr. Stock testified that the trunk lock was in good shape when he left the car to play golf.

At approximately 3:30 p.m., Truman Langfield and his son Brad arrived at the Brookdale Golf Course. As Mr. Langfield was driving into the parking lot, he noticed a man roll a new tire through the lot and place it in the trunk of an older car. This aroused Mr. Langfield's suspicion since the car was not parked in a parking space and no cars in the area were on a jack, as they would be for a tire change.

The car into which the tire had been placed was gone by the time Mr. Langfield found a place to park. While his father put on his golf shoes, Brad looked around the area and found two cars with holes punched in their trunk lids. This information was given to someone in the pro shop and relayed to the police. An officer was dispatched to the golf course and took the report. Mr. Langfield was unable fully to describe the occupants, but did describe the car into which the tire had been placed as an older maroon Oldsmobile with extensive right-side damage. After taking the report

from Langfield, the officer left a note on Mr. Stock's car, asking him to call the sheriff's office if anything was missing from his car.

At the time this report was taken, an all points bulletin (APB) describing the car was released. Road patrolman Albert Clark was one of the officers to receive the APB. Shortly thereafter, he spotted a car on Haggerty Road, approximately 3-1/2 miles from the golf course. Since there were two men in the car and Officer Clark was patrolling alone, he radioed for a backup unit and told the occupants of the automobile that they were being stopped for speeding. When the backup unit arrived, Officer Clark placed the defendants under arrest for larceny from an automobile. Officer Clark admitted at trial that, at the time of the arrest, the police were not positive that anything had, in fact, been stolen.

After the defendants were arrested, the car was searched for fruits of the crime. However, the trunk was not searched at this time, since the officers were unable to find a key which would open it. The occupants and the vehicle were then conveyed to the police station.

At approximately 7 p.m., the Stocks finished playing golf and went back to their car. Because the lock was broken, Mr. Stock was unable to open the trunk until he returned home. At home, he finally opened the trunk with a screw driver and discovered that his spare tire was missing. He then telephoned the sheriff's department as the officer's note had requested.

On the following morning the case was assigned to Detective Dennis Rautio, who immediately contacted Mr. Stock and examined the various reports which had already been made, as well as the automobile which had been impounded. Based on

this information he had the car towed to Craig Pontiac, a car dealership, in order to open the trunk. After trying various master keys at the dealership, Rautio forced the trunk open with a screw driver. Inside were three new radial tires, including one subsequently identified by Stock as the one taken from his trunk. Officer Rautio did not obtain a search warrant prior to this search.

Based on the foregoing facts, we find, as did the trial court, that (1) the police officers had sufficient probable cause to stop defendant's vehicle and to arrest the defendants, (2) the police officer had sufficient probable cause to conduct an immediate warrantless search of the automobile for fruits of the crime at the time and place of the arrest, and (3) the probable cause factors that developed on the scene still obtained at the police stationhouse, after the automobile was impounded. See *Chambers v Maroney*, 399 US 42, 90 S Ct 1975; 26 L Ed 2d 419 (1967).

The defendant does not seriously dispute the above findings. What the defendant does dispute, however, is the trial court's finding that the second search could be legally conducted without a warrant. He argues that the intervening time period of approximately 18 hours between the time the automobile was impounded and the time it was searched was too long to justify a warrantless search of the automobile's trunk. In so arguing, the defendant relies on the following language of *Chambers, supra:*

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater'. But which is the 'greater' and which the 'lesser' intrusion is itself a

debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand *carrying out an immediate search without a warrant.* Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 US 51–52; 90 S Ct 1981; 26 L Ed 2d 428. (Emphasis added.)

This language has been interpreted by our Court on two separate occasions. In *People v Weaver,* 35 Mich App 504, 512; 192 NW2d 572, 575 (1971), our Court reviewed a search conducted some two days after the car had been impounded. Judge (now Justice) LEVIN held that a 2-day delay in searching the car without benefit of a warrant could not be justified under the *Chambers* rationale. He stated:

"[T]he Court there emphasized that a search of an automobile at the station house without a warrant must be 'immediate'. (In two separate places the Court used the phrase 'immediate search without a warrant'.) The word 'immediate' must, therefore, be given meaning. *'Immediate' could mean immediately upon arrival of the automobile at the station house. If that is what it means—and that is how we read it*—then the second search here conducted, two days after the automobile was seized, was not an immediate search and, therefore, was not a search validated or approved in *Chambers."* (Emphasis added.)

However, in *People v Gordon,* 54 Mich App 693, 697; 221 NW2d 600, 603 (1974), the Court upheld a warrantless search at the station some eight hours after the car had been impounded. The *Gordon* panel specifically disagreed with *Weaver's* analysis of the *Chambers* decision, stating:

"Assuming *arguendo* that immediacy is mandated

where a car has been taken to a police station under circumstances as they appear in the instant case, does a warrantless search thereof by the police some eight hours thereafter meet the required mandate? Our answer is in the affirmative. *The word 'immediate' is not and cannot be construed to be synonymous with the word 'instantly'. In those cases where statutes or insurance policies have required immediate action upon the happening of certain events our Supreme Court has consistently held that only action within a reasonable time is required.* (Emphasis added.)

Assuming *arguendo* that the intervening time period must be considered where a vehicle has been impounded at a police station,[1] we conclude that the rationale of *Gordon, supra,* represents a sounder interpretation of the *Chambers* decision. We agree with the *Gordon* panel that the Supreme Court did not intend its above quoted language to be as narrowly construed as it was in *Weaver.* We further agree that a 'reasonable time' is the proper test.

Thus, the crucial question becomes whether the search here involved was conducted within a reasonable time after defendant's automobile was impounded. We find that it was and, as a result, the stolen property discovered in the trunk was properly received in evidence.

The defendant's automobile was impounded in

---

[1] The most recent cases of our Court and of the United States Supreme Court do not even discuss this time factor. *See People v Tillman,* 59 Mich App 768; 229 NW2d 922 (1975), and *Texas v White,* 423 US 67; 96 S Ct 304; 46 L Ed 2d 209 (1975). Both cases simply held that police officers with probable cause to search an automobile on the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. Based on these cases, it is arguable that the time factor involved is of little import. Nor does it appear that the "Impracticability" of securing a warrant should be considered in this type of case. In this regard, we note that the dissent here is very similar to the dissent in *Texas v White, supra.* There, Justice Marshall's arguments were, of course, not accepted by the majority of the Court.

the late afternoon and was only held overnight before the search was conducted. Such a delay does not seem unreasonable. Furthermore, no officer was put in charge of the case until early the following morning. After the case was assigned to Detective Rautio, he moved quickly to assemble the necessary facts and to commence the search of the automobile. This, also, does not seem to be unreasonable delay. It is not an unreasonable procedure for a large metropolitan sheriff's department to assign the investigation of a case to a single detective. Nor is it unreasonable to wait until the following morning to so assign the case where the accused is being held in custody and the automobile has been impounded. In this regard, we find the following language of Judge O'Hara"s dissenting opinion in *Weaver, supra,* to be persuasive:

"It seems to me, so to hold is to disregard completely the diffused responsibilities of a modern metropolitan police department with its necessary differing areas of procedural authority. We are not here dealing with a small town constable, or a sheriff in a small county where the lockup, the vehicle impoundment area, the identification bureau, and the administrative section are in a four or five cell jail with a back yard parking area—and the whole operation staffed by one or two persons. To hold that detectives, patrol car drivers, clerk typists, and the impoundment personnel must all drop everything each is doing at the time of one arrest and concentrate upon the search of one car to determine ownership instanter, is utterly unrealistic." 35 Mich App 504, 520–521.

Consequently, we hold that the search in the present case could properly be conducted without a warrant and, therefore, the trial court did not err by admitting the evidence so discovered.

We have examined the other issues raised by the defendant and have found none which would require reversal of defendant's conviction.

Affirmed.

Bronson, P. J., concurred.

R. M. Maher, J. *(dissenting)*. I find no basis to uphold the warrantless search of defendant's automobile some 18 hours after his arrest.

An evaluation of the legality of the search must begin with the premise that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions". *Katz v United States,* 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967), *Coolidge v New Hampshire,* 403 US 443, 454–455; 91 S Ct 2022; 29 L Ed 2d 564 (1971). Though the Supreme Court recognized, over 50 years ago, an exception to the warrant requirement when an automobile stopped on a highway is searched, *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543; 39 ALR 790 (1925), "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears". *Coolidge v New Hampshire,* 403 US 443, 461; 91 S Ct 2022; 29 L Ed 564 (1971).

The search of defendant's car cannot be justified as a warrantless search incident to an arrest. See *Preston v United States,* 376 US 364, 367; 84 S Ct 881; 11 L Ed 2d 777 (1964) ("Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."), *cf. Coolidge v New Hampshire, supra.* Unless the search falls within the

exception created by *Carroll,* and expanded by *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), it runs afoul of the Fourth Amendment.[1]

Probable cause to believe an automobile contains contraband or evidence of a crime is not, in itself, enough to bring the *Carroll-Chambers* exception into play. If only probable cause was necessary, this search would present no problem, for probable cause would not disappear here by the passage of time. In addition to probable cause, the "automobile exception" requires circumstances making delay impractical.

In *Carroll,* the Supreme Court recognized "a necessary difference between a search of a store, dwelling house or other structure in respect to which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile * * * *where it is not practicable to secure a warrant* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought". 267 US 132, 153; 45 S Ct 280, 285; 69 L Ed 543, 551. (Emphasis supplied.) In *Chambers,* the court did not lose sight of *Carroll's* underlying basis in approving the station house search by police of an automobile they had just seized. *"Only in exigent circumstances* will the judgment of the police as to probable cause serve as a sufficient authorization for a search." 399 US 42, 51; 90 S Ct 1975, 1981; 26 L Ed 2d 419, 428. In both *Carroll* and *Chambers* it is the necessity of a prompt search, one that, for practical reasons, cannot be delayed while a war-

---

[1] There is no possible application of either the inventory exception, *see, e.g. Cady v Dombrowski,* 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973), or the "plain-view" exception, *see, e.g. Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968), here.

rant is obtained, that allows a warrantless search to be viewed as constitutional.[2]

In *Chambers,* police stopped a car and arrested its occupants at night. The Supreme Court noted several factors that made the decision to search the car at the station house rather than at the scene a reasonable one. The choice then facing the police was either to conduct a prompt warrantless search or continue their seizure of the car until a warrant could be obtained. The court refused to express a preference for one or the other of these justified intrusions. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." The Court's approach in *Chambers* shows the appropriateness of then Judge LEVIN's emphasis on the immediateness of the search in *People v Weaver,* 35 Mich App 504; 192 NW2d 572 (1971).

"In exusing a warrantless search at the station house, the majority in *Chambers* argued that the infringement on the defendant's rights by such a search could not be said to be greater than the infringement caused by the detention of the automobile until a warrant could be obtained. Here, two days had passed. The additional intrusion caused by a few hours' delay while a warrant is sought no longer outweighs the disadvantage to the defendant of not requiring a determination by an independent judicial officer before a search is made. Particu-

---

[2] In *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974), the warrantless seizure of a car from which paint scrapings and tire impressions were taken was upheld. Both the plurality and the dissenting opinions stress the need for exigent circumstances in addition to probable cause to justify the warrantless search or seizure of an automobile. Their dispute was whether, under the facts, there were the necessary exigent circumstances.

larly where, as here, the defendant is in jail, there can
be no advantage to him in dispensing with the warrant
requirement. He is not, in the vernacular, 'going any-
place'. There is no inconvenience to him, only to the
people, in delaying the search until a warrant can be
obtained." 35 Mich App 504, 514.

As in *Chambers,* the police here were unable to
make a complete search at the scene. This would
permit a prompt search at the station where the
trunk could have been opened. But, with the de-
fendant in jail and the automobile in police con-
trol, the failure of the police to obtain a warrant
during the 18 hours that elapsed between the
arrest and the search cannot be excused.

The holding in *People v Gordon,* 54 Mich App
693; 221 NW2d 600 (1974), that the search of an
automobile eight hours after it arrived at jail late
at night was immediate, need not be questioned.
The delay here was considerably longer. *Texas v
White,* 423 US 67; 96 S Ct 304; 46 L Ed 2d 209
(1975), the latest Supreme Court case in this area,
approved a station house search of an automobile
that was conducted shortly after defendant's ar-
rest. Though the time period is not emphasized in
the *per curiam* opinion, the fact that the arresting
officers questioned defendant for 30 to 45 minutes
then searched the automobile is mentioned.

This Court should not give its approval to war-
rantless searches of automobiles conducted when
exigent circumstances can no longer be shown.
Only if the basis of the "automobile exception",
the necessity of a search before it would be practi-
cal to obtain a warrant, is ignored and the excep-
tion extended well beyond any application given it
so far by the Supreme Court can this search be
validated. I would reverse.