PEOPLE v HUNTER

PEOPLE v GUSTER

1. SEARCHES AND SEIZURES—AUTOMOBILES—CONTENTS—REASONABLE-NESS—INVESTIGATORY SEARCHES.

The following rules govern the stopping, searching and seizing of automobiles and their contents: (1) reasonableness is the test that is to be applied for both the stop of, and the search of, moving motor vehicles, (2) said reasonableness will be determined from the facts and circumstances of each case, (3) fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved, and (4) a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police.

2. SEARCHES AND SEIZURES—REASONABLENESS—NEED TO SEARCH OR SEIZE—INVASION OF PERSONAL SECURITY.

The reasonableness of a search or seizure depends upon balancing the need to search or seize against the invasion of personal security which such action entails.

3. SEARCHES AND SEIZURES—STOP OF SUSPICIOUS INDIVIDUALS—REA-SONABLENESS—FACTS KNOWN TO POLICE OFFICERS.

A police officer's brief stop of a suspicious individual in order to determine the individual's identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6–9] 68 Am Jur 2d, Searches and Seizures §§ 43, 45, 99.

Validity, under Federal Constitution, of warrantless search of automobile—Supreme Court cases. 26 L Ed 2d 893.

[5, 6] 68 Am Jur 2d, Searches and Seizures § 23.

Search and seizure: observation of objects in "plain view." 29 L Ed 2d 1067.

[9] 68 Am Jur 2d, Searches and Seizures §§ 57, 96.

Lawfulness of "inventory search" of motor vehicle impounded by police. 48 ALR3d 537.

time, however, specific articulable facts must be known to the officer at the time of the intrusion which would warrant a man of reasonable caution in believing that the action taken was appropriate.

4. SEARCHES AND SEIZURES—POLICE OFFICERS—INVESTIGATORY STOPS— SUSPICIOUS INDIVIDUALS—REASONABLE SUSPICION.

A police officer may make an investigatory stop of a suspicious individual based on a reasonable suspicion of the possibility rather than a reasonable belief as to the probability of criminal activity.

5. SEARCHES AND SEIZURES—PLAIN VIEW—CONSTITUTIONAL LAW.

There is no constitutional proscription against the seizure of objects within the plain view of a police officer who is in a place where he has a lawful right to be.

6. SEARCHES AND SEIZURES—EVIDENCE OF A CRIME—PLAIN VIEW DOC-TRINE—PROBABLE CAUSE—FURTHER INVESTIGATION.

A police officer need not recognize an object as evidence of a crime beyond a reasonable doubt in order to seize it under the plain view doctrine because the officer need only have probable cause to believe that the object is connected with a crime; however seized objects do not fall within the plain view doc-trine where they are linked to a crime only after further investigation.

7. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—CONSTITU-TIONAL LAW—EXCEPTIONS.

Generally a search and seizure without a warrant is unreasona-ble per se and violates the Fourth Amendment of the U. S. Constitution and provisions of the state constitution unless shown to fall within one of the recognized exceptions to the rule (US Const, Am IV; Const 1963, art 1, § 11).

8. SEARCHES AND SEIZURES—WARRANT REQUIREMENTS—EXCEPTIONS— AUTOMOBILES—PROBABLE CAUSE.

The search of an automobile represents at least a partial excep-tion to the rule that a search and seizure without a warrant is unreasonable per se, allowing police officers to conduct a search of an automobile without a warrant based on probable cause.

9. SEARCHES AND SEIZURES—AUTOMOBILES—SEARCH WARRANTS— PROBABLE CAUSE—REMOVAL TO STATION HOUSE.

It is not necessary for police officers to obtain a search warrant prior to searching an automobile at a police station where the officers had probable cause to search the automobile on the

street where the car was stopped by the police since the probable cause continues after removal to the station house.

Appeal from Washtenaw, Ross W. Campbell, J. Submitted October 13, 1976, at Lansing. (Docket Nos. 24948, 25559.) Decided November 9, 1976.

R. B. Hunter and Carl G. Guster were convicted of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* Senior Assistant Prosecuting Attorney, Chief of Appellate Division, for the people.

*Matuszak & Stillwagon,* for defendant Hunter.

*Robert E. Logeman,* for defendant Guster.

Before: D. F. Walsh, P. J., and Allen and L. W. Corkin,* JJ.

D. F. Walsh, P. J. The defendants were found guilty of armed robbery[1] following a jury trial in Washtenaw County Circuit Court. Hunter was sentenced to a prison term of 25 to 40 years. Guster was sentenced to a prison term of 20 to 40 years. Both defendants now appeal as of right.

On January 25, 1975, shortly before 2 a.m., two men entered the Crystal House Motel in Ann Arbor, Michigan, and robbed Chris Milaras, the night attendant, at gunpoint. Milaras turned over the cash register receipts and was ordered to lie down in a back room. After several minutes, Milaras discovered that the robbers had fled and called the police.

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA 750.529; MSA 28.797.

Ann Arbor police officers Paul Viergever and James Schantz arrived at the motel at approximately 1:59 a.m. Milaras described the robbers as two black males. One was oriental looking, 5'6" to 5'7" tall, weighed approximately 170 pounds and wore a dark colored jacket and a green hat with a small brim. The other was 5'9" tall, had a medium build and wore dark clothing. The descriptions were telephoned to the police dispatcher together with the information that approximately $170 in bills and rolled coins had been stolen. The use of a vehicle was not mentioned.

Officers James Schook and Dale Williams received the radio broadcast around 2 a.m. and parked in a gas station on the corner of Main and Stadium Streets in Ann Arbor in order to watch for persons matching the descriptions. After observing traffic for about five minutes, the officers saw a 1964 Chevrolet containing two black males traveling in a westerly direction away from the location of the motel. The passenger in the car watched the patrol car while the vehicle passed through the intersection and afterwards, completely turning around in his seat. The officers were unable to see the facial characteristics of the occupants. Neither the driver nor the passenger was wearing a green hat. Based on the conduct of the passenger and the fact that the occupants were two black males, however, the officers decided to stop the vehicle.

After the Chevrolet had pulled to the curb, the driver and passenger exited. Officer Williams approached the driver, advised him that he had been stopped in connection with the armed robbery, and requested identification. Officer Schook made a similar request of the passenger. The driver and passenger produced drivers licenses bearing the

names R. B. Hunter and Carl Guster, respectively. The officers returned to the patrol car and ran a warrant check on the two. The defendants reentered their vehicle. Learning of an outstanding warrant against Guster, the officers reapproached the car for purposes of taking Guster into custody and advising Hunter that he was free to go. As the officers neared the car, the defendants stepped outside. While advising Guster that he was under arrest on the outstanding warrant, Schook noticed a green hat stuck between the driver's seat and the console. He asked Guster if he could look inside the car and received an affirmative response. As Schook reached for the hat, he observed money protruding from the edge of the console. He opened the console and discovered a large amount of money consisting of wrapped bills and rolled coins. Schook went to the rear of the car and placed Guster and Hunter under arrest for armed robbery. While Williams watched the men, Schook returned to the car and seized the hat, the money, clothing from the back seat and a holster for a small caliber gun found under the driver's seat. A tow truck was called and the Chevrolet was transported to the police station. Without attempting to secure a warrant, Schook immediately searched the vehicle and discovered a small caliber pistol under the dashboard.

At trial, defense counsel objected to the prosecutor's motion to admit the hat, pistol, money and holster into evidence. Counsel argued that an insufficient factual basis existed to justify the stop, that the seizure of the hat could not be justified on the basis of the plain-view doctrine as the hat had not been linked to the crime and that Guster was incapable of consenting to a search of the car, not being the owner, and that his consent was involun-

tary as he was not advised of his right to refuse. Counsel further contended that the warrantless search at the police station violated defendants' constitutional rights. The trial court rejected defendants' arguments and admitted the items into evidence. On appeal, defendants renew their arguments that the evidence should have been suppressed.

In *People v Whalen,* 390 Mich 672, 682; 213 NW2d 116 (1973), the Michigan Supreme Court adopted four rules governing the stopping, searching and seizing of automobiles and their contents:

"1. Reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles.

"2. Said reasonableness will be determined from the facts and circumstances of each case.

"3. Fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved.

"4. A stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police."

Accord, *People v Parisi,* 393 Mich 31; 222 NW2d 757 (1974), *People v Lillis,* 64 Mich App 64; 235 NW2d 65 (1975). The reasonableness of a search or seizure depends upon balancing the need to search or seize against the invasion of personal security which such action entails. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), *United States v Brignoni-Ponce,* 422 US 873; 95 S Ct 2574; 45 L Ed 2d 607 (1975).

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his

shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. * * * A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v Williams,* 407 US 143, 145–146; 92 S Ct 1921, 1923; 32 L Ed 2d 612, 616–617 (1972) (citations omitted).

Accord, *People v Whalen, supra.* Specific, articulable facts must be known to the officer at the time of the intrusion which would warrant a man of reasonable caution in believing that the action taken was appropriate. *Terry v Ohio, supra, People v Lillis, supra.* An investigatory stop may be based on a reasonable suspicion, rather than a reasonable belief, of the possibility, as compared to the probability, of criminal activity. *People v Lillis, supra.* Because the reasonableness of a stop must be based on the facts of each case, an examination of other decisions provides only an indication of the facts necessary to justify such action.

In *People v Whalen, supra,* police officers were advised by radio broadcast of a jewelry store robbery and were directed to watch for a large white car with three dark-complected occupants, possibly Mexicans, one of whom was wearing a tan jacket. Two Michigan State policemen saw a white Continental and a dark Corvette traveling toward the Ohio border and pulled alongside the vehicles, shining flashlights into the faces of the drivers. The driver of the Continental was dark complected and wearing a tan jacket. The officers stopped the vehicles and subsequently observed jewelry boxes, jewelry and money in the Continental. Applying the rules previously quoted, the Supreme Court found that the officers acted reasonably in stop-

ping the vehicle: the driver, his apparel, and the car, matched the general descriptions given in the broadcast and the car was stopped on a highway frequently used by criminals for fleeing to another state. See also, *People v Hutton,* 50 Mich App 351; 213 NW2d 320 (1973) (automobile observed in the early morning hours with a combination television set-record player protruding from the trunk held sufficient to justify investigative stop).

In *People v Parisi, supra,* the Court reached an opposite conclusion. In that case, a police officer stopped an automobile because: (1) it was traveling slower than permitted, (2) the youthfulness of the occupants led the officer to suspect a violation of the city's curfew ordinance, and (3) the officer believed the occupants were ill or sleeping. The court rejected the first basis as insufficient in the absence of a minimum speed requirement or traffic interference, found the ordinance inapplicable, and ruled that the final basis was without foundation. See also, *People v Roache,* 237 Mich 215; 211 NW 742 (1927). (Fact that automobile was driven slower than normal and occupants constantly watched police officer held insufficient to justify stop.)

While the facts of the case at bar present a close question, this Court is of the opinion that the officers' conduct in stopping the vehicle falls within the parameters outlined by *Whalen* and *Parisi.* The officers knew of the motel robbery and the fact that it involved two black males from the police broadcast; they stopped the defendants within a short time after the robbery and a short distance from the motel; and the defendants were traveling in a direction opposite the scene of the crime. While merely staring at a police officer is clearly insufficient to warrant an investigative

stop, *People v Roache, supra,* Guster's conduct, in light of the other circumstances existing immediately prior to the stop, further supports the reasonableness of the officers' decision to investigate. In stopping the defendants, the officers were seeking to maintain the status quo. Their intrusion upon the liberty of the defendants was tapered to the circumstances of the case. Only a brief detention and questioning was originally intended. Society's interest in protecting itself from an ever-increasing criminal element outweighs the rights of these defendants, under the circumstances of this case, to attack, as unreasonable, such a minimal intrusion upon their personal liberty.

As the initial stop of defendants was lawful, Officer Schook was entitled to seize the green hat which he unexpectedly observed while speaking to Guster. The seizure of objects within the plain view of an officer in a place where he has a lawful right to be is not constitutionally proscribed. *People v Whalen, supra, People v Triplett,* 68 Mich App 531; 243 NW2d 665 (1976). Defendants challenge the application of the plain view doctrine on the basis that the hat seized by Schook did not match that described in the police broadcast. The testimony offered at trial refutes defendants' assertion. In addition, while seized objects which are linked to a crime only after further investigation do not fall within the plain view doctrine, *People v White,* 46 Mich App 195; 207 NW2d 921 (1973), a police officer need not recognize an object as evidence of a crime beyond a reasonable doubt in order to seize it under the plain view doctrine. The officer need only have probable cause to believe that the object is connected with a crime. *United States v Williams,* 385 F Supp 1400 (ED Mich, 1974). In the present case, Officer Schook was not

required to know for a fact that the green hat which he observed in the vehicle was that worn by one of the robbers of the Crystal Motel. Given the radio broadcast, the facts which justified the initial stop and the appearance of the hat, Schook had probable cause to believe that the hat was connected with the armed robbery. As Schook was entitled to seize the hat under the plain-view doctrine, the ability of Guster to consent to a search of the car and the voluntariness of his consent need not be discussed.

In searching for the hat, Schook saw currency protruding from the console, opened it, and discovered a large sum of money in bills and rolled coins which he subsequently seized. Generally, a warrantless search and seizure is unreasonable per se and violates the Fourth Amendment and the state constitution unless shown to fall within one of the recognized exceptions to the rule. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *cert den,* 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975), *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971). The search of automobiles represents at least a partial exception to the warrant requirement, allowing officers to conduct warrantless searches of automobiles based on probable cause. *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), *People v White* 392 Mich 404; 221 NW2d 357 (1974), *cert den,* 420 US 912; 95 S Ct 835; 42 L Ed 2d 843 (1975). In the case at bar, Officer Schook, having seen the money sticking out of the console, was confronted with the choice of searching the vehicle or permitting Hunter to drive away and risk the possible loss of evidence. The information transmitted to the officers by the police dispatcher, the circumstances surrounding the stop-

ping of the vehicle, the presence of the hat, and Schook's discovery of the money provided probable cause to open the console and search the remainder of the vehicle. This court finds that the warrantless search of the vehicle was reasonable under the circumstances. *People v Whalen, supra.*

The probable cause which the officers had to search the automobile on the street where defendants were stopped continued at the station house. *Chambers v Maroney, supra, Texas v White,* 423 US 67; 96 S Ct 304; 46 L Ed 2d 209 (1975), *People v White,* 68 Mich App 348; 242 NW2d 579 (1976). Officer Schook, therefore, was not required to obtain a search warrant prior to searching the automobile at the police station.

Affirmed.