PEOPLE v HARRISON

PEOPLE v PEGRAM

Docket Nos. 90124, 92682. Submitted January 21, 1987, at Lansing. Decided October 5, 1987.

Charles Harrison and Steven Pegram were arrested two days after an apartment was broken into and several items were stolen. The victim gave police a description of two men she had seen in her building and a description of the car in which they drove away. The car that Pegram was driving at the time of the arrest matched the description of the car given to the police. The occupants of the car also fit the very sketchy description of the two men the victim gave to the police. Pegram, the owner of the car, and Harrison were arrested automatically pursuant to a Detroit Police Department policy that whenever a vehicle is on a list of vehicles connected with felonies and is stopped all occupants of the car are arrested. Following the arrest, a search of the car resulted in the finding of a high school class ring with the victim's name engraved on it. The two men were identified by the victim in separate lineups and were bound over for trial in Washtenaw Circuit Court on charges of breaking and entering an occupied dwelling with intent to commit larceny. At trial, the victim identified the defendants as the two men she saw in her building and testified that she had identified defendant Harrison at a lineup. Following the trial, the jury found both defendants guilty as charged. Both defendants subsequently pled guilty to being fourth-felony offenders. The court, Henry T. Conlin, J., sentenced defendants on their breaking and entering convictions, vacated those sentences, and sentenced defendants as habitual offenders. Defendants filed separate appeals, which have been consolidated.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Criminal Law §§ 408 *et seq.*, 748 *et seq.*, 984 *et seq.*

What constitutes probable cause for arrest—Supreme Court cases. 28 L Ed 2d 978.

Modern status of rule as to test in federal court of effective representation by counsel. 26 ALR Fed 218.

1. Defendant Pegram was not denied effective assistance of counsel or his right to a fair trial by his attorney's trial strategy.

2. Any error which may have occurred by the trial court's failure to place on the record its reasons for allowing evidence of two of defendant Pegram's prior convictions to be used for impeachment purposes was cured by the court's explanation of the reasons for allowing use of the evidence of the convictions at defendant's motion for a new trial.

3. Defendant Harrison's arrest was not based on probable cause, and his subsequent lineup identification was therefore improper. Reversal of defendant Harrison's conviction is necessary.

4. That there may have been an improper delay in his arraignment does not entitle defendant Harrison to a dismissal of the charge against him.

5. The magistrate did not abuse his discretion in binding defendant Harrison over for trial.

Defendant Pegram's conviction and sentence are affirmed.

Defendant Harrison's conviction and sentence are reversed and the matter remanded for further proceedings.

1. CRIMINAL LAW — WITNESSES — ASSISTANCE OF COUNSEL.

A claim that serious and prejudicial error was committed by counsel or that defendant was denied effective assistance of counsel because of counsel's failure to call two witnesses to support defendant's alibi defense is without merit where counsel's failure to call the witnesses was obviously not an oversight but intentional and was induced by competent tactical reasons.

2. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — FAILURE TO CREATE A RECORD — HARMLESS ERROR.

It was improper for a trial court not to create a record at the time of its ruling that evidence of a defendant's prior convictions could be used for impeachment purposes, but the error is harmless where the court adequately explained the reasons for its decision during a subsequent hearing on a motion for a new trial (MCR 2.613[A]).

3. ARREST — PROBABLE CAUSE — AUTOMOBILE PASSENGERS.

The mere fact that a person is a passenger in an automobile known to have been involved in the perpetration of a felony two days earlier does not provide probable cause to arrest that person.

4. CRIMINAL LAW — ARRAIGNMENT — DELAY — REMEDIES.

An improper delay in arraignment may necessitate the suppres-

sion of evidence obtained as a result of that delay, but it does not entitle the defendant to dismissal of the charges against him.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Marilyn A. Eisenbraun,* Assistant Prosecuting Attorney, for the people.

*Gerald J. Van Wambeke,* for Charles Harrison.

*Roman S. Karwowski,* for Steven Pegram.

Before: M. J. KELLY, P.J., and SAWYER and M. R. KNOBLOCK,* JJ.

SAWYER, J. In this consolidated appeal, both defendants were convicted, following a jury trial, of breaking and entering an occupied dwelling with intent to commit larceny. MCL 750.110; MSA 28.305. Subsequently, both defendants pled guilty to being fourth-felony offenders. MCL 769.12; MSA 28.1084. Defendant Harrison was sentenced to a term of five to fifteen years in prison on the breaking and entering conviction, but the sentence was vacated and defendant was thereafter sentenced to a term of ten to forty years as an habitual offender. Defendant Pegram was sentenced to a term of ten to fifteen years in prison on the breaking and entering conviction, but his sentence was also vacated and he was sentenced to a term of ten to forty years in prison as an habitual offender. The defendants filed separate appeals, which have been consolidated. We affirm the conviction of defendant Pegram, but reverse the conviction of defendant Harrison.

On the evening of November 29, 1984, the victim was leaving her apartment in Ypsilanti when

---

* Circuit judge, sitting on the Court of Appeals by assignment.

she saw an unknown man knocking on the door of the apartment next to hers. She described the person as a black man wearing dark clothing and a large coat. She said hello to him and then went downstairs to the street level. As she passed the mail boxes at the main entrance, she saw another man standing there. She also said hello to him and walked past him. She returned to her apartment approximately twenty minutes later and observed the same two men loading something into the trunk of a brown Chrysler Cordoba. They drove away without turning the car's headlights on and the victim got into her car and followed the Cordoba to a red light, where the victim had an opportunity to write down the license plate number. As she was writing down the number, the Cordoba accelerated and drove through the red light. When the victim returned to her apartment she discovered that her color television set, jewelry, camera and bedspread were missing.

The police were summoned and the victim described the men she saw as being two black men, one who was five feet, ten inches tall, clean shaven with a short Afro hair style and wearing a dark green coat. She described the other as being five feet, eight inches tall, with a mustache and short Afro hair style. The second man was wearing a cap, but she could not describe the rest of his clothing. She also gave the license plate number to the officer.

The car seen by the victim matched the description and license plate number of a car registered to defendant Pegram. The address for defendant Pegram, as reflected by motor vehicle records, was located in the City of Detroit, specifically the police department's third precinct. Accordingly, the officers of the third precinct were notified to be on the lookout for defendant Pegram's automobile.

Two days after the break-in, on December 1, 1984, three Detroit police officers, Officers Nevers, Dameron and Horne, observed defendant's automobile while on routine patrol and, being aware of the fact that the car was listed on a police "hot sheet" of cars thought to be involved in felonies, they pulled the automobile over. According to Dameron, the bulletin gave a "very sketchy description" of the two individuals suspected in the breaking and entering. Nevertheless, Officer Nevers, after determining that defendant Pegram's vehicle was the vehicle identified with the breaking and entering and that there were two black individuals in the car, which was consistent with the report of the breaking and entering, placed both defendant Pegram and the passenger, defendant Harrison, under arrest. According to Officer Dameron, it is the policy of the Detroit Police Department that whenever a vehicle is on the "hot sheet" as being connected with a felony and is stopped all occupants of the car are automatically arrested.

After defendants were arrested, a search was conducted of the car pursuant to a warrant and a high school class ring was discovered with the victim's name engraved on it. Furthermore, at trial, the victim identified defendants as the two men she saw in the area of her apartment prior to the burglary. The victim further testified that after defendants' arrest a lineup was held at which she identified defendant Harrison as one of the two men. A second lineup was held in May of 1985, at which she identified defendant Pegram.

### DEFENDANT PEGRAM

Defendant Pegram first argues that he was denied effective assistance of counsel because defense counsel failed to perform as well as a lawyer with

ordinary training and skill by failing to adequately investigate defendant's alibi defense prior to trial. Defendant further argues that defense counsel committed a serious mistake in advising defendant not to testify. We disagree. Defendant preserved this issue for appeal by moving for an evidentiary hearing and a new trial in the trial court based upon the ineffective assistance of counsel claim.

A hearing was held, at which one of the alleged alibi witnesses, Raymond Burton, testified that defense counsel spoke with him on the day of trial and that Burton told defense counsel that, at approximately the time of the robbery, he was driving with defendant Pegram to a department store in Detroit. According to Burton, defendant had worked for him up until that time, but that Burton kept no records on his employees and pays them in cash. Defendant's other proposed witness, his live-in girlfriend, testified that, on the day of the breaking and entering, defendant had left for work at 8:00 A.M., leaving his automobile parked in front of their house. At approximately noon, a friend stopped by and borrowed the car. According to the girlfriend, the car was returned at approximately midnight. Defense counsel had spoken with her prior to trial. However, she was never subpoenaed or asked to attend the trial. Defense counsel testified that he chose not to present Burton as an alibi witness so as to avoid giving the prosecution an opportunity to destroy Burton's credibility. Rather, he called Burton under the guise of a witness to describe defendant's appearance at the time of the offense, which afforded him the opportunity to have Burton testify that he saw defendant at the time of the offense. He further testified that he felt that the girlfriend's testimony would be inadequate merely because she had loaned the car to a friend "earlier in the day."

Where defense counsel's failure to call a witness is for tactical reasons, rather than a mere oversight, that failure does not establish ineffective assistance of counsel. *People v Johnston,* 76 Mich App 332, 343; 256 NW2d 782 (1977). Similarly, this Court is reluctant to second guess trial counsel in matters of trial strategy. *People v Lotter,* 103 Mich App 386, 390; 302 NW2d 879 (1981). From our review of the record, we conclude that the manner in which defense counsel presented Burton's testimony and his failure to present the girlfriend's testimony at all were conscious decisions by defense counsel as a matter of trial strategy rather than an oversight. Furthermore, we do not perceive counsel's decision to call this witness to be a "serious mistake." A defense witness whose credibility is seriously eroded by competent cross-examination could surely hamper a defendant's ability to obtain an acquittal. Accordingly, we do not believe that defendant has established either ineffective assistance of counsel or a denial of his right to a fair trial.

Defendant also argues that trial counsel committed a serious mistake by advising him not to testify. We disagree. This, too, was a matter of trial strategy which we do not perceive to be a mistake. The testimony of defense counsel at the evidentiary hearing and that of codefense counsel establishes that defense counsel unsuccessfully attempted to suppress evidence of defendant's prior convictions. Unable to suppress the evidence of the prior convictions, defense counsel and counsel for codefendant discussed trial tactics and both determined that neither of their clients should testify because of their criminal records. Because the prosecutor could impeach defendant with evidence of defendant's prior criminal record, defense coun-

sel's advice to defendant not to testify was not a serious mistake.

Defendant Pegram's other issue is that the trial court erred in failing to place on the record its reasons for allowing evidence of two of defendant's prior convictions to be used for impeachment purposes. Although it does not appear that a record was created contemporaneously with the trial court's ruling that evidence of two of defendant's prior convictions, attempted larceny from a person and receiving and concealing stolen property with a value of more than $100, could be used for impeachment purposes, any error in this regard was cured by the trial court's explanation of the reasons for allowing use of the evidence of the convictions for impeachment purposes at the motion for a new trial. While it was improper for the trial court not to have created a record at the time of its ruling on the issue, we believe that the trial court adequately explained the reasons for its decision during the hearing on the motion for a new trial, making its initial failure to create a record harmless. MCR 2.613(A). Cf. *People v Haggart*, 142 Mich App 330, 344-345; 370 NW2d 345 (1985) (failure of the prosecution to lay a proper foundation for the admission of novel scientific evidence was harmless when such foundation was presented later in the proceedings). See *People v Gary Johnson*, 105 Mich App 332; 306 NW2d 501 (1981); *People v Crawford*, 83 Mich App 35; 268 NW2d 275 (1978). We do not believe that the trial court abused its discretion in allowing the use of evidence of the two prior convictions for impeachment purposes.

## DEFENDANT HARRISON

Although defendant Harrison raises several is-

sues, one is dispositive. Defendant argues that his arrest was not based upon probable cause. We agree.

The most disturbing aspect of defendant's arrest arises from the disclosure by Officer Dameron during direct examination that it is the policy of the Detroit Police Department to arrest all passengers in an automobile if that automobile is wanted in connection with a felony. This was confirmed by the testimony of Officer Horne, who also stated that it is normal departmental policy to "take all occupants" of a vehicle wanted in connection with a felony. We would have considered it axiomatic that it would be repugnant to both the federal and state constitutions for police officers to arrest without warrant all occupants of a motor vehicle merely because that motor vehicle was at some time in the past connected with a felony. Obviously, in light of the Detroit Police Department's policy, this principle is not as clear as one would expect.

It is certainly true that a police officer may have probable cause to arrest an occupant of a vehicle suspected to be involved in the perpetration of a felony. This is illustrated by the situation in *People v Hunter,* 72 Mich App 191; 249 NW2d 351 (1976), where this Court approved the stopping of an automobile several minutes after an armed robbery where the automobile was traveling in a direction away from the scene of the crime and the occupants fit a general description of the suspects. The Court did, however, note that that case considered a close question. *Id.* at 198. In a similar vein, this Court approved of an automobile stop in the case of *People v Clifton Fuqua,* 146 Mich App 250; 379 NW2d 442 (1985). In *Fuqua,* the police established a blockade in response to an armed robbery. The automobile in which the defendant

was traveling arrived at the blockade at approximately the correct time for someone to travel from the scene of the robbery to the blockade and the vehicle roughly corresponded to the description the officers received over police radio. *Id.* at 258. Furthermore, following the stop, the officers were able to observe that the occupants of the vehicle corresponded closely to the descriptions of the robbers. *Id.* This Court found that the stop and subsequent arrest were proper.

The above cases, however, are dramatically different from the case at bar in terms of the time element. In both *Hunter* and *Fuqua,* the automobiles were stopped a short time after the robberies and were generally in a position where one could reasonably expect a getaway car to be when fleeing from the scene of a crime. In the case at bar, on the other hand, defendants were arrested approximately forty-eight hours after the breaking and entering.

However, in *People v Green,* 70 Mich App 311; 245 NW2d 730 (1976), a divided Court of Appeals approved a warrantless arrest occurring at a suspect's apartment some five and one-half hours after a robbery and murder. In *Green,* the police officers knew of the license number of the car used in the robbery, the fact that there were at least two perpetrators, and a general description of the perpetrators. The police tracked the owner of the car to a particular apartment, where they observed the suspected vehicle. They then entered the apartment with permission. Inside the apartment, there were three males who matched the general description received by the officers. The officers placed all three men under arrest. While two judges of the panel found the arrest to be based upon probable cause, Judge R. B. BURNS dissented, concluding that he could not find proba-

ble cause for the arrest of the defendant. Judge BURNS argued that, even if the police had probable cause to arrest the owner of the car, that would not provide justification for the arrest of anyone who happened to be in the apartment. *Id.* at 318.

The case at bar is even farther afield than the situation presented in *Green.* Even if one can accept the concept that criminal defendants might well be together five and one-half hours after the crime, it is much more difficult to accept the concept that two suspects would necessarily still be together forty-eight hours after a criminal episode. That is, it does not follow that, since defendant Harrison was with defendant Pegram forty-eight hours after the breaking and entering, it was defendant Harrison who was with defendant Pegram at the time of the breaking and entering.[1] Two days had passed between the crime and the arrest. Nothing presented to us gives us any reason to believe that the person accompanying defendant Pegram at the time of the crime would also be accompanying him two days later. Moreover, there is nothing from the general description provided to the officers which would narrow the range of suspects to defendant Harrison. Had there been a distinctive feature to defendant Harrison which was contained in the description given the officers, then there may have been probable cause to arrest him. However, the sketchy description provided

---

[1] While defendant Pegram does not question the lawfulness of his own arrest, we do note that we would have little difficulty in concluding that probable cause did exist to arrest defendant Pegram. Defendant Pegram's car was involved in the breaking and entering, this fact was known to the police, and defendant Pegram's physical description was consistent with that of the perpetrators of the breaking and entering. Similarly, we do not question the initial stopping of the Pegram car inasmuch as it had been positively identified as being involved in the breaking and entering. Rather, the question directly before us is whether mere occupancy of the vehicle by defendant Harrison is sufficient to establish probable cause to believe that defendant Harrison was involved in the crime.

the officers would undoubtedly have fit a large portion of the population of the City of Detroit.

Moreover, the fact that defendant Harrison's description is generally consistent with the description given to the officers appears to have been at most a secondary consideration to the officers in determing to make the arrest. The primary reason that defendant Harrison was arrested, according to the officers' testimony, was the fact that defendant Harrison was a passenger in a vehicle wanted in connection with a felony. That is, as explained by the officers, it would be the policy of the Detroit Police Department to arrest any occupant regardless of whether they matched a description of the suspect. We find that policy to be abhorrent.

For the above reasons, we conclude that the arrest of defendant Harrison was without probable cause.[2] Because defendant Harrison was unlawfully arrested, his subsequent lineup identification by the victim was the fruit of the proverbial poisonous tree. See *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). At this point we would normally continue the analysis in order to determine whether or not the victim's identification of defendant Harrison at trial was allowable based upon an independent basis for that identification. Unfortunately, for the prosecutor, even if an independent basis exists for the victim's identification of defendant Harrison, a retrial is necessary inasmuch as the jury was fed the poisonous fruit by the prosecutor when he elicited from the victim during her testimony at

[2] We wish to briefly dismiss an ancillary argument raised by the prosecutor on appeal. The prosecutor indicates in her brief that defendant Harrison was also arrested on an outstanding bench warrant from Kent County, apparently due to delinquency in child support payments. However, the prosecutor fails to refer us to any portion of the record which supports the proposition that defendant Harrison was arrested on the bench warrant nor did we find any such reference in the record.

trial the fact that the victim had identified defendant Harrison during the lineup. To make matters worse, the prosecutor during closing argument also argued to the jury the fact that the victim had identified defendant Harrison at the lineup. Thus, even if the victim's identification of defendant at trial was proper because of the existence of an independent basis for the identification, the jury was nevertheless tainted by being exposed to the improper lineup identification. Accordingly, reversal of defendant's conviction is necessary.

While our determination of the above issue disposes of this case, we wish to briefly address two other issues raised by defendant as they may be relevant in the event that defendant is retried. First, defendant argues that there was an improper four-day delay in his arraignment. However, even assuming that there was an improper delay, there is no remedy to be made as the delay was not used to extract a confession or inculpatory statements from defendant. While an improper delay in arraignment may necessitate the suppression of evidence obtained as a result of that delay, the delay does not entitle a defendant to dismissal of the prosecution. *People v Griffin,* 33 Mich App 474; 190 NW2d 266 (1971).

Defendant also argues that the magistrate abused his discretion in binding defendant over for trial. We have reviewed the preliminary examination transcript and find no abuse of discretion. *People v Talley,* 410 Mich 378; 301 NW2d 809 (1981).

Defendant Pegram's conviction and sentence are affirmed. Defendant Harrison's conviction and sentence are reversed and the matter is remanded to the circuit court for further proceedings consistent with this opinion. If the matter proceeds to a new trial, the trial court shall allow the in-court identi-

fication by the victim only upon a finding that there exists an independent basis for her identification.

Affirmed as to defendant Pegram.

Reversed and remanded as to defendant Harrison.