*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERNEST KAMAIUU SPENCER,

Defendant-Appellant.

UNPUBLISHED
December 08, 2025
12:05 PM

No. 370854
Kalamazoo Circuit Court
LC No. 2023-001099-FH

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Defendant, Ernest Spencer, appeals as of right his jury trial convictions of possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(*v*), and carrying a concealed pistol in a vehicle (CCW), MCL 750.227(2). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

On June 6, 2023, around 3:00 a.m., Spencer and his friend, Leesa Anstine, walked to a park after they had smoked crack cocaine. While at the park, Spencer's cousin, Elijah Ford, called them over to his truck. Spencer got into the front passenger seat and Anstine got into the backseat. Ford then drove away from the park. Within minutes, he was pulled over by Kalamazoo Public Safety Officer Bradley Spieldenner. During the traffic stop, Officer Spieldenner recognized Spencer from past encounters. He believed that Spencer was under the influence of drugs because he was behaving erratically and speaking strangely. Eventually, he asked Spencer to step out of the vehicle. Spencer complied.

Spencer then consented to Officer Spieldenner conducting a search of his person. During that search, Spencer disclosed that he had a "crack pipe" in his pocket. Eventually, it was determined that Spencer had an outstanding warrant for unpaid child support, so he was placed in custody and a more thorough search of his person was conducted. During that search, a plastic baggie was discovered in his waistband. Testing revealed that the baggie contained 0.81 grams of cocaine. Additionally, during a search of the vehicle, Officer Spieldenner observed a loaded pistol and an extended magazine on the seat where Spencer had been sitting. On the floorboard, behind the driver's seat, he also discovered a bag containing narcotics and a separate bag that contained a

live cartridge that matched the ammunition in the firearm that had been found on Spencer's seat. Thereafter, Officer Spieldenner advised Spencer of his rights, which Spencer waived. Spencer admitted that he was in possession of cocaine, but stated that he did not know anything about the gun.

At trial, Spencer testified that he was acting under duress when he concealed the gun and the cocaine from the police. He explained that when the police initiated the traffic stop, Ford threw the baggie of cocaine at him, retrieved his gun from the driver's door compartment, and pointed it at him. He stated that because he was terrified he stuffed the baggie of cocaine into his pants. Ford then tossed the gun and extended magazine at him. He "brushed" the gun from his lap to under his leg just before Officer Spieldenner reached the vehicle. The duress defense was further supported by testimony from Officer Spieldenner, who testified that he believed the bags in the backseat belonged to Ford, not Spencer. He explained that felons often "push" their firearms on other people so that they can avoid a charge of felon in possession of a firearm. Based upon that rationale, Officer Spieldenner opined that Ford, who was a convicted felon, "pushed" his gun onto Spencer.

The jury, however, rejected the duress defense and convicted Spencer of possession of less than 25 grams of cocaine and carrying a concealed weapon. This appeal follows.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Spencer argues that his defense lawyer provided ineffective assistance at trial. "Whether a defendant received ineffective assistance of trial counsel is a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). The court's factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *Id*.

### B. ANALYSIS

The Michigan and United States Constitutions guarantee criminal defendants the right to effective assistance from their lawyers. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023); see also US Const, Am VI; Const 1963, art 1, § 20. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A lawyer's "decisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *Putman*, 309 Mich App at 248. "This Court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. (quotation marks and citation omitted). Instead, this Court must "affirmatively entertain the range of possible reasons [the defendant's lawyer] may have had for proceeding as they did." *Cullen v Pinholster*, 563 US 170, 196; 131 S Ct 1388; 179 L Ed 2d 557 (2011) (quotation marks and citation omitted). Judgment will only be set aside if the defendant can show that his or her lawyer's deficient performance was prejudicial to his or her defense. *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994).

Prejudice exists when "there is a reasonable probably that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

## 1. QUESTIONING OFFICER SPIELDENNER

Spencer first argues that his lawyer provided ineffective assistance by failing to elicit testimony from Officer Spieldenner that Ford "forced" the gun and drugs on Spencer. We disagree. If the defendant's lawyer has already presented evidence of a defense, then he or she may be justified in choosing not to present cumulative testimony regarding the defense if doing so would disproportionately favor the prosecutor. See *People v Carbin*, 463 Mich 590, 602-605; 623 NW2d 884 (2001). In *Carbin*, our Supreme Court held that a defendant's claim failed both the "performance" and "prejudice" parts of the *Strickland* test when his defense counsel chose not to present corroborating testimony that added "nothing of substance" to the defendant's alibi defense but contained "new and important pieces of information favorable to the prosecution that were not part of [previous] trial testimony." *Id*. at 602, 604-605.

In this case, testimony that Ford forced Spencer to hide the gun would have been unnecessarily cumulative. Spencer's lawyer asked Officer Spieldenner if it was common for felons to "push" a firearm on someone else, to which Officer Spieldenner responded, "That's correct." Officer Spieldenner then stated that Ford was a convicted felon and that "it is common for them to have other people hold their firearms." Although the word "force" conveys duress more effectively than "push" or "hold," Spencer's lawyer still captured the essence of Officer Spieldenner's observations from his police report.

Moreover, Spencer's lawyer could have strategically determined that directly questioning Officer Spieldenner regarding his use of the word "force" in the police report would backfire. Officer Spieldenner was not in the vehicle when Ford tossed the gun and drugs to Spencer. His belief that the gun was Ford's and that Ford gave the gun to Spencer to conceal it was based upon his training and experience as a police officer. Knowledge of the exact circumstances of the exchange, however, fall firmly into the realm of speculation. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) (stating that speculation is "an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference."). He could have surmised that the only way that Spencer would have taken the gun was if he was threatened with bodily harm. But it is equally likely that he could have believed that Spencer was forced into taking the gun and drugs because of his familial relationship with Ford or because he wanted to avoid Ford, who was allegedly one of his drug-dealers, from being unable to supply him with drugs in the future.

Finally, even if Officer Spieldenner testified that he believed that Ford forced Spencer to conceal the gun, a jury still likely would have found persuasive the prosecutor's argument that Spencer complied with Ford not because he feared death or serious bodily harm but because he wanted to help his cousin avoid another lengthy prison sentence and to avoid being caught himself. On this record, the decision not to present this cumulative and speculative testimony did not fall below an objective standard of reasonableness and it did not undermine confidence in the outcome of the trial.

## 2. CLOSING ARGUMENTS

Next, Spencer asserts that during closing arguments, his lawyer unreasonably failed to emphasize Officer Spieldenner's opinion that the gun and drugs did not belong to Spencer and that Spencer was under the influence of drugs at the time of his arrest. A court's review of closing arguments is especially deferential. "Even if some of the arguments would unquestionably have supported the defense, it does not follow that counsel was incompetent for failing to include them. Focusing on a small number of key points may be more persuasive than a shotgun approach." *Yarborough v Gentry*, 540 US 1, 7; 124 S Ct 1; 157 L Ed 2d 1 (2003).

Here, in its closing argument, the prosecution had already provided a clear and concise statement of Spencer's duress, acknowledged that Officer Spieldenner thought the gun belonged to Ford, and emphasized that a CCW conviction only requires possession, not ownership. Spencer's lawyer's decision not to repeat those facts was a matter of strategy. Instead of focusing on those points, he highlighted other evidence suggesting that Ford was the owner of the gun, such as the matching ammunition found in Ford's bag. He also chose to highlight that the burden was on the prosecutor to prove beyond a reasonable doubt that Spencer was *not* acting under duress. Additionally, Spencer's lawyer may have chosen not to mention Officer Spieldenner's opinion that Spencer was under the influence of drugs because Spencer himself had admitted to that, so there was no use in emphasizing an undisputed fact. Spencer had testified that he was terrified after Ford pointed a gun at him, and Spencer's lawyer was trying to convince the jury that Spencer would have feared for his life regardless of whether he was high or not. In this situation, calling any more attention to Spencer's impaired state of mind would only undermine his defense. Ultimately, Spencer's lawyer did not need to summarize all of the evidence presented at trial, and his decision to exclude these details from Officer Spieldenner's testimony was a matter of trial strategy that did not fall below an objective standard of reasonableness.

## 3. BODY CAMERA FOOTAGE

Next, Spencer argues that his lawyer should have introduced footage from Officer Spieldenner's body camera. A defense lawyer may be justified in choosing not to present certain evidence if it would open the door to questions regarding the defendant's criminal convictions or other forms of impeachment. See, e.g., *People v Harrison*, 163 Mich App 409, 415-416; 413 NW2d 813 (1987).

Here, the body camera footage certainly included some statements that would be favorable to Spencer. Specifically, Officer Spieldenner stated that he had known Spencer "for a while" and that he did not "know him to carry any guns." He further stated that Spencer "hardly even carries the clothes on his back, most of the time."[1] He recognized that Spencer, whom he saw walking around all the time, had no place to hide a gun with an extended magazine, and he questioned where Spencer would even come across such a gun. That favorable evidence, however, was

---

[1] This Court can review a video "as easily as the trial court . . . ." *People v White*, 294 Mich App 622, 633; 823 NW2d 118 (2011), aff'd 493 Mich 187 (2013).

cumulative to Officer Spieldenner's trial testimony regarding his belief that the gun was Ford's, not Spencer's.

And its admission would open the door to aspects of the body camera footage that were not favorable to the defense. For instance, the footage contradicts elements of Spencer's testimony, which the prosecutor could use for impeachment. First, Spencer testified that he asked Officer Spieldenner, "[C]an I talk to you; I need to tell you something," then he exited the car with his hands up. The footage reveals that he never said this and never held his hands up. Spencer testified that Ford took the magazine out of the pistol before throwing it at him, but the footage reveals that the gun was still loaded when Officer Spieldenner found it. Given that Spencer was the only person available to testify that Ford pointed a gun at him, his credibility as a witness was critically important to the duress defense. Thus, the decision not to present evidence that contradicted Spencer's testimony was a matter of trial strategy.

For similar reasons, Spencer's lawyer was not ineffective for failing to question Officer Spieldenner regarding his statement that he did not know Spencer to carry guns. Questioning a police officer about past contact with Spencer could have opened the door to evidence of his previous crimes. Spencer argues that there was no such risk because he has never been convicted, charged, or investigated for carrying guns. Assuming that to be true, there are other strategic reasons not to inquire about Spencer's previous interactions with the police. Such testimony could unnecessarily lengthen the trial and distract from the core issue of Spencer's defense. The testimony could also portray Spencer in a poor light, making him less sympathetic or trustworthy to the jury. The decision to avoid this bias and delay was a matter of trial strategy that did not fall below an objective standard of reasonableness.

### 4. ANSTINE'S OUT-OF-COURT STATEMENTS

Next, Spencer asserts that he was denied effective assistance because his lawyer did not seek to introduce Anstine's statement to an officer that she got into the truck to buy drugs from Ford.

Spencer maintains that the statement was not hearsay, so it was admissible. We agree. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." MRE 801(c)(2). Hearsay is inadmissible unless an exception applies. MRE 802. One exception exists for a statement against the declarant's penal interest, which is considered trustworthy because it exposes the declarant to criminal liability and it is "supported by corroborating circumstances that clearly indicate its trustworthiness." MRE 804(b)(4). Our Supreme Court has adopted a nonexhaustive, three-factor test for determining whether the totality of the circumstances corroborates the statement to bolster its trustworthiness in situations involving custodial statements used to exculpate the defendant. *People v Barrera*, 451 Mich 261, 275; 547 NW2d 280 (1996). These factors include (1) "the relationship between the confessing party and the exculpated party"; (2) "whether the confessor made a voluntary statement after being advised of his [constitutional] rights"; and (3) "whether there is any evidence that the statement was made in order to curry favor with the authorities." *Id*. (quotation marks and citation omitted).

In this case, Anstine's statement was clearly admissible under MRE 804(b)(4). An officer advised her of her constitutional rights before questioning. After receiving and understanding a

warning that anything she says can be used against her in court, a reasonable person in Anstine's position would not expose herself to criminal liability by admitting to purchasing drugs unless that admission were true. See *Barrera*, 451 Mich at 281. Anstine and Spencer were friends, but there is no evidence to suggest that Anstine fabricated her statement to draw scrutiny away from him. It is also unlikely that she wanted to "curry favor" with the officer because she was not entirely cooperative. Anstine's statement is also corroborated by the fact that the police found a glass smoking pipe on Spencer and Anstine, but not on Ford, which indicated that Ford was a dealer and Anstine was a user. Given this evidence, Anstine's statement satisfies the definition of a statement against penal interest and would have been admissible at trial.

However, Spencer was not denied effective assistance merely because his lawyer failed to introduce an admissible statement. Spencer's lawyer may have reasonably believed that the statement could detract from the duress defense. After hearing that both Anstine and Spencer were drug users, that they went to the park and got into Ford's truck together, and that Anstine was buying drugs from Ford, a jury could infer that Spencer was also buying drugs from Ford. This supports the inference that Spencer was in possession of cocaine because he had just completed a drug transaction, not because Ford forced him at gunpoint to hide the cocaine. This inference also contradicts Spencer's testimony that he was not in the truck to obtain drugs. Spencer's lawyer may have reasonably decided that the best way to avoid these obstacles was to avoid the subject of Anstine's interrogation entirely. That decision was a matter of trial strategy and was not objectively unreasonable.

Even if Spencer could overcome the presumption that his lawyer's performance was not deficient, he has failed to show prejudice. Anstine's statement would have only a minimal effect on the case. Spencer's lawyer had already elicited testimony that Officer Spieldenner believed that Ford owned the bag of narcotics in the backseat and the bag with ammunition that matched the gun's ammunition. That testimony supports Spencer's case that Ford was a drug dealer who owned the gun and the baggie of cocaine. Anstine's statement that she was buying drugs from Ford would be cumulative at best and actively harmful at worst. Consequently, the failure to introduce this statement did not undermine confidence in Spencer's conviction. See *Carbin*, 463 Mich at 604-605.

## 5. FORD'S OUT-OF-COURT STATEMENTS

Finally, Spencer argues that his lawyer should have introduced Ford's statement to Officer Spieldenner that he was on parole for a previous CCW conviction. If an out-of-court statement is used to demonstrate the declarant's motive, then the statement is either nonhearsay or subject to the hearsay exception for the declarant's then-existing state of mind under MRE 803(3). *People v Jones (On Rehearing After Remand)*, 228 Mich App 191, 206; 579 NW2d 82 (1996). A statement that directly asserts the declarant's motive is admissible substantively under MRE 803(3). *Id*. On the other hand, a statement that circumstantially shows the declarant's motive is not hearsay if it is only admitted for that purpose. *Id*.

Ford's statement that he had been on parole for a CCW charge circumstantially demonstrated that Ford's desire to avoid a CCW charge motivated him to force his firearm onto Spencer. This inference does not depend on whether Ford had a previous CCW conviction or was on parole. Even if the statement were false, it showed that Ford was aware that a convicted felon

can be held criminally liable for possessing a firearm. Accordingly, the statement would not be hearsay if introduced to show motive.

However, the evidence was largely cumulative. From Officer Spieldenner's existing testimony, a jury already could infer that (1) felons generally know that they can be arrested for possessing firearms, (2) this creates a motive to push their firearms onto other people, and (3) Ford is a convicted felon, so he most likely has the same knowledge and motive. Introducing evidence of Ford's CCW conviction would only serve to change "most likely" to "definitely." Furthermore, the dispute at trial was whether Spencer voluntarily participated in hiding Ford's gun, not whether Ford had a motive to hide the gun in the first place. Spencer's lawyer may have reasonably believed that it was unnecessary to complicate the trial with additional evidence of Ford's conviction for such minimal benefit. Failure to present this minor piece of cumulative evidence on a tangential issue that was fundamentally undisputed did not influence the outcome of Spencer's case.

## C. SUMMARY

In sum, on this record, Spencer has not overcome the presumption that his lawyer provided constitutionally effective assistance. Instead, all the challenged decisions appear to have been matters of trial strategy that did not prejudice Spencer's case. Reversal is unwarranted.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney